[No. 19302.   Department Two.   September 2, 1925.]

IRA D. WARES, *Respondent,* v. WASHINGTON GROCERY COMPANY, *Appellant.*[1]

SALES (142)—BREACH OF CONTRACT—EVIDENCE—SUFFICIENCY. The evidence sustains findings that plaintiff breached his contract to buy a stock of merchandise, where he did not at first assign the excuse that he afterwards gave, and that all the evidence corroborates witnesses who testified that he stated he backed out of the deal because of a more advantageous offer.

SAME (143)—BREACH BY PURCHASER—DAMAGES—EVIDENCE. Upon plaintiff's breach of a contract to purchase a stock of merchandise, on which he had paid $2,500, the defendant is entitled to retain the amount received where there was definite proof of losses established in excess of the amount.

SAME (140)—ACTION FOR DAMAGES—DEFENSES. The purchaser's breach of contract to purchase a stock of goods, with additions to be made thereto, can not be justified by the fact of excessive ad-

[1]Reported in 238 Pac. 911.

.ditions to which the purchaser made no objections or complaint when he became aware of them.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered October 4, 1924, upon findings in favor of the plaintiff, in an action for money received, tried to the court. Reversed.

*R. W. Greene,* for appellant.

*Crollard & Steiner,* for respondent.

MACKINTOSH, J.—Discarding much that appears in the briefs in this case regarding complications arising out of the pleadings, and many questions of fact which do not go to the merits of the controversy, this can be summarized, as far as necessary for its determination, in very nearly the same manner as it is stated in the respondent's brief.

Prior to February 10, 1923, the respondent, who was the manager of a wholesale grocery company in Wenatchee, was desirous of entering business on his own account and opened negotiations with the appellant, a wholesale grocery company with its head office at Bellingham, which was maintaining a branch house and business in Wenatchee. At that time the stock on hand in Wenatchee amounted in value to approximately $45,000. The negotiations resulted in a written agreement dated February 10, signed by both the parties, and reading as follows:

"This agreement entered into the 10th day of February, 1923, between Washington Grocery Co., party of the first part, and Ira Wares, party of the second part, Witnesseth: Party of the first part agrees to sell to the party of the second part, their stock of merchandise and fixtures located at Wenatchee, Washington. And the party of the second part agrees to purchase stock of merchandise and fixtures upon the following terms and conditions, to-wit: Purchase price of merchandise to be based upon the present cost in ware-

house. Price on fixtures to be agreed upon. Five hundred dollars to be paid at once, receipt of which is hereby acknowledged. Nineteen thousand five hundred dollars to be paid when inventory is taken. The unpaid balance of the purchase price to be covered by a note given by the party of the second part to the party of the first part, payable on or before one year after date, with interest at 7% per annum from date, and as security for the payment of the unpaid balance, party of the second part agrees to assign to party of the first part an amount of the capital stock of the new corporation to be organized by party of the second part, equal in amount to 25% more than the above described note. . . . Party of the second part agrees to take possession February 24, 1923.''

After this agreement had been made, the respondent requested the appellant to increase the stock on hand to a value of at least $60,000, and as the respondent admits in his pleadings, the appellant ''pursuant to said request increased said stock and would not otherwise have done so.'' The stock was purposely being kept low by the appellant for the purpose of minimizing the amount of taxes which would be assessed against it on March 1 following. After this contract was made, the respondent did not desire to take possession on February 24, and consequently, on February 22, the parties mutually agreed that the time of delivery of the stock should be extended to March 31; that, as consideration for that extension, the respondent should pay the 1923 taxes against the stock, and should also pay the appellant $2,000 on the purchase price in addition to the $500 already paid. Respondent thereupon paid the additional $2,000.

From the facts as agreed upon by the parties, it further appears that appellant proceeded with the handling of the stock in compliance with the contract; and on March 31, the extended date of delivery, notified the respondent that the stock was ready to be

turned over and proceeded to take an inventory, which inventory showed the value of the stock on hand to be approximately $73,000. On March 31 the respondent refused to accept the stock and refused to pay the balance of the initial payment. The appellant offered delivery and demanded payment; neither delivery was taken nor payment made. March 31, being Saturday, on the following Monday, April 2, another offer of the property was made to the respondent, who again refused to make his payment. The testimony shows, in addition to these facts, that, on the day before delivery was to be made, that is, on March 30, the respondent indicated to an officer of the appellant, who had come from Bellingham to Wenatchee for the purpose of closing up the transaction, that he would not take the stock as it was, but insisted that from $15,000 to $20,000 be deducted from the price. At that time no inventory had been taken and, as far as the testimony shows, the respondent did not know what the inventory value would be and was not complaining because of the excessive amount of goods contained in the warehouse. Subsequently to the respondent's refusal to carry out his agreement, the appellant sold all the stock of goods in its Wenatchee branch and closed out the business.

There is nothing in the testimony to show that the respondent had done anything in the way of organizing a corporation as called for by the terms of the contract, and the testimony shows that, some days subsequent to March 31, he stated to witnesses that his reason for refusing to complete the transaction was that the concern by which he was employed had "offered him such a good deal that he could not afford to turn it down." Thereafter the respondent began this action to recover the $2,500, and the appellant, by cross-complaint, seeks recovery of a judgment against the respondent arising from his breach of the contract.

As already indicated, considerable confusion has arisen from the state of the pleadings. But disregarding that confusion and considering the case purely on the merits, there is left but one question in the case, and that is a question of fact as to who breached the contract and as to who is entitled to judgment.

We are satisfied from an examination of the testimony that, in order to carry on the wholesale grocery business in Wenatchee, such as contemplated by the parties, a stock of from $60,000 to $70,000 was necessary. The respondent's excuse for failure to comply with the contract and take the stock and make the payment is that he was not obligated to take a stock of as great value as that offered; that, when a stock which inventoried $73,000 was offered to him, it was so greatly in excess in value of the stock which he had agreed to take, which he claims was one of the value of $60,000, that it amounted to a breach on the appellant's part of its contract and he was under no further liability. We find the evidence to preponderate in favor of a holding that the agreement in this regard was that a stock of between $60,000 and $70,000 should be transferred. There is no question that the parties did not agree on the exact amount of stock to be turned over.

We are justified in this conclusion by evidence in the case which is very persuasive that the respondent did not decline to accept the stock for the reason now assigned. He made no effort to determine what the value of the stock was nor, in fact, much, if any, effort to put himself in a position to comply with his agreement. When he first indicated that he would not perform his part, he did not know what the inventory would show. When the inventory was furnished him, without any investigation of the stock to see whether it was properly inventoried, he renewed his refusal to comply with his obligation, and repeated the refusal when an op-

portunity on the following business day was given him to perform. Throughout we are impressed with the want of any evidence that the respondent was seriously intending to take over this stock of goods on March 31, no matter what it may have at that time been worth. All the evidence goes to corroborate the testimony of those witnesses who say that the respondent, having made satisfactory arrangements with his then employer, found it more advantageous to continue in that employment than to proceed to become a proprietor himself. It would seem that, at the time, he thought that the payment of $2,500 to the appellant had been a satisfactory investment, in that he had been able to use the contract to advance his own interest with his then employer. The breach was by the respondent, and the question then arises as to what damages have resulted to the appellant therefrom.

Considerable testimony was introduced as to what those damages amounted to, but they are not so definite as to be measured exactly. One item of $1,645.93, being the amount of taxes which the respondent had agreed to pay, and which the appellant was compelled to pay, is established as definite, and that there was a total damage in excess of this amount of approximately $2,500 appears with sufficient clearness to justify the court in saying that the appellant was entitled to retain the amount which it had received from the respondent in satisfaction of its damages by the breach.

Some question has arisen that the refusal of the respondent to take the stock may have been on account of the fact that it was what is known as "dead stock." This contention cannot be seriously treated, in view of the fact that within three months after the respondent had breached his contract this stock was all sold in that very district by the appellant.

The trial court seemed to think the respondent was entitled to breach the contract because of the inclusion in the inventory, along with the stock of groceries, of certain fixtures. As we understand the respondent, he now disavows any reliance on that fact, and we therefore give it no further consideration.

The respondent, in his pleadings, expressly admits that the appellant proceeded with the handling of the stock in compliance with the contract; that is, that the additions which it made to the original stock to the value of $28,000 were additions it made in order to perform the contract. The appellant presumed, as it had a right to do, that the contract was going to be performed, and the additions which it made were for the express benefit, not of itself, but for the purpose of fulfilling its contract obligation, for there was no other reason for its putting $28,000 additional worth of property into the warehouse for which it was to receive no profit, but was merely lending respondent $28,000 under the terms of the contract for a year at seven per cent. Any increase in the property was, of course, as the respondent admits, for his benefit and furnished no excuse for his breach. If he knew an excessive amount was being added, the time to complain was when he became aware of it, and if he was not aware of it on March 31, that could not have been the ground on which he repudiated the contract at that time. On either horn of the dilemma he is impaled.

The judgment is reversed, and the cause remanded with instructions to enter judgment in favor of the appellant for its costs and disbursements, and with the right to retain the $2,500 which it has already been paid.

TOLMAN, C. J., FULLERTON, MITCHELL, and HOLCOMB, JJ., concur.